Good morning, Your Honor. I'm C. Murray Amster, appearing for the petitioner and appellant. I believe, in this case, our issues are basically, was the statement involuntary? I don't think there's any issue about the Miranda aspect of it. It deals with cross-examination. I think our second issue is, was the ruling by the state court in contradiction to establish Supreme Court law? And our third issue is, did it contribute to the verdict? Or, as the government wants to argue, was there overwhelming other evidence? I would just like to state to the court to look at the fact that we had seven counts filed against this petitioner in the state court. And at least in count 2, 3, 5, 6, and 7, we had a not guilty. In count 4, we had a not true to the kidnapping. It was the murder count that the state was able to get a conviction on. And that was primarily rested on the fact of the defendant's statement that came out during cross-examination. I believe that, clearly, it was involuntary because you had an individual being questioned at a time when he was injured, underneath anesthesia or underneath some type of medication, and the officers are not stopping. They keep going on, even though he has expressed his statement many times. I'll talk to you at another time. But he goes ahead and tells them the story, doesn't he? Absolutely. And at the end of it, he says to them, that's my side of the story. No question. Well, there's nothing coerced about that. The issue is the totalitarian circumstances. Well, why the totality when you have a statement by the defendant, that's my side. He's entitled to tell his story. The question is that before he says, my side, he keeps saying, I'll tell you at another time. I know it, but he goes ahead and then he says, that's my side, I'm telling you. Absolutely. The point that I want to state and what you have to consider, either agree or disagree, is that as he's saying that, what are the conditions he's under? He is injured. He is in a hospital bed. He is underneath the treatment of doctors. If none of those things were true, then this is not a case, in my opinion. If we have a situation that he's in a police station and he hasn't been injured and he says, I'll tell you at another time, boom, we've got no case. That, I think, is the issue that you have to consider. We can go back and forth on what he said. We know what he said. I'm not in disagreement with that. My issue is, is it proper when you have a person in the condition he's in asking to talk at another time for detectives not to adhere to that request? That's the issue here. And that's what the court has to decide. Let me ask you this. Sure. You're in the world of AEDPA. Yes, I am. Anti-terrorism. Limitations on federal court habeas relief. Right. Yes. So here, the State Court of Appeals conducted a de novo review of whether or not his statements were involuntary. When it was on appeal. When it was on direct appeal, the State Court of Appeals looked at the argument and did de novo. I will agree with that. Okay? Okay. So you lost. That is correct. All right. Now you're over here under federal habeas. Correct. Aren't we just asking whether or not the State Court's decision was an unreasonable application of clearly established federal law? Well, that's really what I'm saying. And I'm saying it was. But that. It was an unreasonable. Yes. I mean, that's why I'm saying, was it contrary to established United States Supreme Court law? Well, there's two different standards there. Okay. Contrary to and unreasonable. I think it is unreasonable underneath the situation. But, yes, we are in the world, the world of ADPA, as you stated. I have to live underneath that. And that's the argument as stated. And so we can go back and forth, but those are the parameters we're in. And I'm in agreement with you. And, yes, I believe. I'm arguing the unreasonable aspect of it. Is it your contention that we also have to do a de novo review with the question of voluntariness? We don't. We don't, do we? We're just asking whether or not the state court's decision is unreasonable. You have to do a de novo review of what the magistrate did. You have to ask the question of unreasonable. Right. That's correct. He found that it was not an unreasonable application. Right. So now you have to do, in my opinion, you step in the shoes of the magistrate. Okay. Let me have another question for you. So we're still in the world of habeas. You're still in the world of habeas. As you pointed out, as Judge Noonan mentioned, or as you mentioned, I forget who, Brecht, we have to do, even if we were to agree with you that there was a violation, that his statements were involuntary, we have to do a Brecht analysis. Correct? Prejudice. Yes, and I think it's still more. His testimony essentially tracked his statement. Yes and no. So where's the harm? Okay. And that, I think, is a critical question. Let me address that, if I may. Okay. The harm is it doesn't completely track it because he's saying that there was, in reality, he's saying it was self-defense in his testimony. His statement to the initial police officers is not self-defense and contradictory. Clearly, if the state was not able to use his statement that he gave originally, it's stronger testimony for him. Okay. The utilization of that clearly affects the jury believability of his statement. Okay. Because it was basically utilized to contradict. And that comes, and that's why I state the fascinating aspect of this case is you have so many counts where the jury found him not guilty. The reality is if this was such a strong case for the state, the jury would have come back guilty on all of those counts. They didn't. And so the fact, that's why I highlighted at the beginning that you have so many not guilty on so many of these other counts where you could argue that overwhelming evidence, what does that tell you? That tells you that when that jury got in the deliberation room and they dealt with count one, they were looking at his statement and his statement he made to the police. I think this panel is going to have a hard time on the aspect of saying that it didn't contribute to the conviction. I think that rightfully so. I think you keyed in on the point of we're in the world of habeas. And I've been around long enough. I'm just going to say how I believe, good or bad, weak or strong. I feel the strongest aspect of my case is the fact that it did harm the verdict. Okay? The problem I have is I'm in the world of habeas. I believe it's an unreasonable application. That is all I can do is key on the issues and answer your questions the best way I can. All right. Okay? Unless there's any other questions, I will reserve. Thank you. Good morning, Your Honors. Deputy Attorney General Daniel Chang up here on behalf of the Respondent and Appellee. The issue in this case is whether the California Court of Appeals' rejection of Petitioner's Miranda claim involved an unreasonable application of what was contrary to or involved an unreasonable application of clearly established federal law as stated by the United States Supreme Court or was based on an unreasonable tribunation of facts in light of the evidence presented at trial. Now, the applicable law here is clear. Voluntary statements, even though made in violation of Miranda, are nevertheless admissible for impeachment purposes. Now, Petitioner does not dispute that the deferential standard of review really applies here. Now, what are the criteria for determining whether or not the statements were voluntary? Well, we look at the totality of the circumstances, including the conduct of both the interviewing officers as well as the Petitioner. We look at the length and location of the interrogation. We look at the personal characteristics of the defendant, including how well he is able to express himself, his state of mind. Let me ask you this. Was he in a wheelchair at the time this interrogation took place? I believe so. And was he, would you say, sleep-deprived? He was complaining about lack of sleep. That's correct, Your Honor. And was he complaining about pain? Yes, he was. And the interview took place in the medical ward of the prison? That's correct, Your Honor. And did he repeatedly ask the police officers to leave? Yes. And does the State dispute that the police violated Miranda? No. And then at one point he talked about wanting to put forth his side of the story. At several points he stated that. That's correct, Your Honor. And all right. Okay. The fact that, I mean, as I said before, the fact that we don't dispute that there's a limit. Let me ask you, was there a reason why the police that interrogated him, why they didn't give him a Miranda warning? They did advise him of his Miranda rights. Why did they do that? Why did they advise him of his Miranda rights? It's been on the books since 1965. Because, I'm presuming because it was part of their standard procedure during Castillo. You mean they gave him his Miranda rights? Yes, they gave him his Miranda rights. Yes. The fact that, however, the fact that his Miranda rights, that the police did not honor his rights remain silent, though, is not itself dispositive of the voluntary issue. Otherwise, that would swallow the rule that voluntary statements made in violation of Miranda are admissible for impeachment purposes. Now, the facts of this case fall comfortably. Keep your voice up. I'm sorry. The facts of this case fall comfortably within the criteria of what this Court and other courts have considered to be voluntary statements. For example, in But he did ask the police officers to leave on several occasions. Yes, he did, Your Honor. All right. Okay. In United States v. Martin, the defendant there claimed that his statements were involuntary because he was on Demerol and because he was in great pain. This Court rejected that claim, observing that, in that case, the defendant was awake and coherent, that his injuries, while painful, did not render him unconscious or comatose, and that the defendant, in that case, wanted to tell his side of the story. Similarly, in United States v. Guerrero, this Court rejected, again rejected, the defendant's claim that his statements were involuntary because there the defendant was not promised any tangible benefit during the interview. He was college-educated, and he was not interrogated for a long period of time. And I think the case of Cunningham v. City of Winnicott is particularly helpful there. In that case, even though the interrogation lasted eight hours, and even though the statement came from a mental disorder, the Court there did not agree with his claim that his statements were involuntary because there the officer never yelled at or threatened the defendant with any violence, and because the defendant was afforded breaks during that eight-hour interrogation. And in cases that have concluded that the statements were involuntary, I would submit that the facts here can be readily distinguishable from those cases. For example, in the United States Supreme Court case, Mincy v. Arizona, the Court concluded that his statements were involuntary. There the defendant was depressed almost to the point of coma. He was confused and unable to think clearly. He was not coherent. The interview there lasted four hours. He had IV tubes sticking out from his body, and he was lapsing in and out of consciousness. In Blackburn, where also the Court found the statements were involuntary, the defendant was insane at the time of the interview. He had a history of mental illness. The interview lasted eight hours. And there the officer actually wrote the confession on behalf of the defendant. Now, what did the court of appeal in this case, what facts did the court of appeal point to in finding that the Petitioner's statements were voluntary, findings which I would submit are entitled to a presumption of correctness under 2254e1? Well, the court of appeal looked at how the fact that the interview in this case was only 45 minutes, that Petitioner was alert and conscious, that he was sufficiently clear-minded to make sure all of his statements were either self-serving or exculpatory, that he was 35 years old, he was college-educated, he had a job in the competitive industry, and that he likely gained some familiarity with the criminal justice system in light of his long criminal history. For those reasons, I would submit to you that the court of appeals' rejection of the Miranda claim was not contrary to Supreme Court law. Now, even assuming that the trial court erred in missing and admitting his statements for impeachment purposes, any error was harmless under BRIC. There was no possibility that those statements had any injurious effect on the verdict in this case. This is true for several reasons. First of all, as I alluded to earlier, he never confessed. His statements were actually perfectly consistent with what he testified to in trial. He told the police that he stabbed E.M. in self-defense, which started going crazy. He testified to that same points during trial. And, in fact, his statements were – his testimony was so consistent with what he told the police that during redirect, defense counsel went line by line in front of the jury, demonstrating to the jury how his testimony was consistent with what he told the police. The second reason why any error was harmless is because the impeachment value of his statements to the police were duplicative because there was other evidence demonstrating that Petitioner was not a credible witness. And, finally, the challenge statements were not a significant part of the prosecution's case. I'm looking for – Can we just decide this case on BRIC, under BRIC? You could. I mean, I think – I believe that the BRIC analysis is very strong in our favor. Unless the Court has any questions, I'm prepared to submit on the briefs. Thank you. As the State has pointed out, this is a totality of the circumstances, situation. This is not a Miranda issue. Miranda was given. I will want to point out the fact that there was a long conversation that took place before Miranda was given. The police created that situation. There were inconsistencies of his statement that the prosecution utilized during closing argument to point out, and that was the harm that occurred. The question in this case is, if the Petitioner has said, I want an attorney, there would be no issue here. We would have an involuntariness. We would be done. The question is, in his State, with the conditions he was in, did he fully understand what he needed to say to stop the conversation? What do we have? We certainly have him in custody. He's in an incarcerated facility, so he's not at liberty to leave. Okay? Now we've got the added context here that he's underneath medical care. At what point does it trigger involuntariness when an individual is in a custody setting under medical care, can't leave voluntarily because of the custody setting, and then can't terminate the interview because he can't terminate in a way because of the medical care, and the detectives are not leaving when he's asking them to? That's your involuntariness issue, and the question is, underneath the harm, did it contribute to the conviction? And that's what I believe the government or the State cannot show, that it contributed, and that's the critical aspect of it. And I say contributed because of so many not-guilties on other counts that were relied on evidence other than the statement presented. Unless there's any other questions. Well, is your argument that when he asked the police officers to leave and that was repeated, that he was telling them that he wanted to terminate the after that, did he ask for a lawyer? I do not believe he asked for a lawyer, but he wanted to terminate the conversation, and we have to understand, this is an individual under medication, and maybe he wasn't as articulate as he could have been as somebody who was not underneath medication. So what standard are we going to hold somebody who is in this situation clearly saying he wants to terminate, wants to end this, and not once, but And how else is he to terminate it? I also believe, if I'm correct, he rolls over at one point. He takes his back to them. So not only do you have him conveying verbally, you have him conveying physically, and the detectives are staying. So how else is he to terminate? He can't get up and walk away. Well, let's assume there was error. Was that error harmless or not? It was not harmless, and it is our argument it was not harmless based on two things. One, looking at the other counts, because the other counts are based on the other testimony brought in from the other witnesses, and the jury clearly must have found those other witnesses not believable beyond a reasonable doubt. They all had checkered pasts. So now, what differentiates the jury's decision between count one and the other counts? Well, his past wasn't so great either. No, but, yes, I agree, but they were evaluating the other witnesses. Well, he was a witness, and they evaluated his testimony as well, and they apparently didn't believe him either. Correct, but a defendant stands in a different position than other witnesses because His testimony, once he takes a stand, his testimony is evaluated just like any other witness. Maybe under the They can reject it in total. They can accept part of it, not accept part of it. They treat him as a witness, and all the instructions that deal with witnesses apply to the defendant when he takes the stand. I agree that under the law, the instructions say that, and as far as I can go, practically, once a defendant gets on the stand, the jury's looking at his statement and they're concentrating on that, and the minor contradiction that there might be in his statement, the jury's going to hang their hat on that, and so at the point that he gets on the stand and he testifies, count one is based upon what he's saying in a comparison to what the statement is that was given to the police. All I can say is, from the reality of being in a trial court, that's what happens with a jury. The whole thing changes when that defendant gets on the stand. It's not about anybody else. It's about his statement in comparison to the original statement he made to the police. All right. That's all I have here over your time. Okay. Thank you very much. Thank you. If this matter is submitted...
judges: Pregerson, Noonan, Paez